IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| JOHNNY RAY FRANKLIN and ) | |
| CYNTHIA LYNN FRANKLIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:09-CV-268 |
| ) | |
| DOMETIC CORPORATION, ) | |
| GULF STREAM COACH, INC., and ) | |
| SUNCOAST RV, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This diversity action is now before the court on the "Motion for Summary Judgment" [doc. 29] filed by defendant SunCoast RV, Inc. Plaintiffs have responded in opposition. The motion is ripe for the court's consideration and will be denied.

Also before the court is the June 2, 2011 "Motion for Summary Judgment on Behalf of Gulf Stream Coach, Inc." [doc. 26]. Plaintiffs have not responded to that motion within the time allowed by the Federal Rules of Civil Procedure, the local rules of this court, and the parties' agreed stipulation. *See* Fed. R. Civ. P. 6(a), (d); E.D. TN. LR. 7.1(a); docs. 34-35. The "Motion for Summary Judgment on Behalf of Gulf Stream Coach, Inc." will be granted.

I.

*Background*

In 2006 plaintiffs purchased a motor home from SunCoast RV, Inc.'s ("SunCoast") Louisville, Tennessee dealership. The motor home was manufactured by Gulf Stream Coach, Inc. ("Gulf Stream") and bore a vehicle identification number ("VIN") of 1GBE5U1G16F418359. Within a year, the vehicle was consumed by fire. Plaintiffs blame that event on the motor home's refrigerator, which was manufactured by defendant Dometic Corporation ("Dometic") and installed by Gulf Stream. Specifically, plaintiffs contend that the refrigerator was fitted with the wrong size heating element.

Plaintiffs' complaint advances two theories of liability. First, plaintiffs allege that one of the three defendants "place[d] the wrong size heating element in the refrigerator thereby causing the fire in question." Plaintiffs also accuse defendants SunCoast and Gulf Stream of violating subsections 47-18-104(b)(6) and (b)(27) of the Tennessee Consumer Protection Act ("TCPA"). Those subsections make unlawful the following "unfair or deceptive acts or practices affecting the conduct of any trade or commerce":

> (6) Representing that goods are original or new if they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used or secondhand;
>
> . . .
>
> (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person; *provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and the director of the division*[.]

2

Tenn. Code. Ann. §§ 47-18-104(b)(6), (27) (emphasis added).[1]

## II.

*Summary Judgment Standard*

Defendants' motions are brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment.[2] Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically-stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

---

[1] The above-italicized language was added to subsection (b)(27) by amendment dated October 1, 2011. Neither of the pending summary judgment motions address the effect of that amendment on plaintiffs' capacity to bring a claim under subsection (b)(27).

[2] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010. The Advisory Committee Notes to the 2010 amendments reflect that the standard for granting summary judgment "remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]." Fed. R. Civ. P. 56 advisory committee's note. The summary judgment motions in this case were filed after the revised version became effective and therefore are governed by that version. *Cf. Wheeler v. Newell*, 407 F. App'x 889, 891 n.3 (6th Cir. 2011) ("The motion for summary judgment in this case was filed prior to December 1, 2010, and is governed by the version of Rule 56 that was in effect at the time the motion was filed.").

3

The movant must first demonstrate that the non-moving party has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party carries that initial burden of showing that there are no genuine issues of material fact in dispute, the non-moving party must then present specific facts demonstrating a genuine issue for trial. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *See id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *See id.* at 251-52.

"Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). "It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997).

4

III.

*Analysis*

A. SunCoast

In support of its summary judgment motion, SunCoast has submitted the affidavit of Sandra Johnson, who was SunCoast's business manager at the time plaintiffs purchased their motor home. Ms. Johnson states that SunCoast did not design or manufacture the refrigerator or any of its parts, and that SunCoast "did not assemble, disassemble, replace, alter or have any contact of any kind with the heating element in the Dometic refrigerator or with any component part within the Dometic refrigerator."[3] In sum, SunCoast argues that it was merely the seller of a motor home and a refrigerator assembled by others. According to SunCoast, it "did not participate in and was not involved in any way" in causing the harm suffered by plaintiffs.

In response, plaintiffs have submitted relevant portions of the deposition of Fred Hassan, who they identify as SunCoast's chairman. Mr. Hassan was asked, "If another customer came in to your shop and had a heating element on a Dometic refrigerator that was not working properly on the AC side of the refrigerator, would you go and rob a unit on the lot if you didn't have the heating element in stock?" In response, Mr. Hassan testified that such action is "against our policy" and "taboo, we cannot do that."

---

[3] SunCoast also cites the court to a disclaimer of warranties signed and acknowledged by plaintiffs. However, the instant complaint does not contain a cause of action for breach of warranty under the U.C.C.

5

Taboos notwithstanding, Mr. Hassan then admitted that "in extreme situations" SunCoast does remove parts from new vehicles for replacement purposes. He claimed that such an event would be evidenced by a "rob sheet" which would be "authorized by the floor manager . . . once the part was taken off the inventory unit, brought in and shown that it was reordered."

Introduced as an exhibit at Mr. Hassan's deposition was a SunCoast "Repair Order Print Out" form corresponding to VIN number 1GBE5U1G16F418359, which was the motor home purchased by plaintiffs. Among the charges on the repair form is $59.60 for a "heating element" with the model number 3856044422.

Plaintiffs have also submitted defendant Dometic's interrogatory responses. Therein, Dometic states that the refrigerator in plaintiffs' motor home would have initially contained a heating element with model number 0173768037. Dometic further responded that part number 3850644422 "is a direct replacement for" heating element number 0173768037. Confronted with Dometic's responses at his deposition, Mr. Hassan acknowledged that the part number referenced on plaintiffs' motor home repair form is the same as Dometic's "direct replacement" part, but for two transposed digits (385<u>6</u>044422 versus 385<u>0</u>644422).

Nonetheless, Mr. Hassan denied that his company, SunCoast, did any repair or replacement work whatsoever involving plaintiffs' motor home refrigerator or its subject parts. Mr. Hassan claims that the part number cited on the repair form has "nothing to do

6

with" a Dometic refrigerator, and he insists that the purported absence of a "rob sheet" is proof that SunCoast made no alterations whatsoever to plaintiffs' refrigerator.

Quite plainly, plaintiffs have met their burden of demonstrating a genuinely disputed issue of material fact, irrespective of the representations of SunCoast representatives Hassan and Johnson. Plaintiffs' expert has opined that the motor home fire was caused by an improper refrigerator heating element. Mr. Hassan admitted that SunCoast does at times remove parts from new motor homes for replacement into other vehicles. The "Repair Order Print Out" form for plaintiffs' motor home evidences that a replacement heating element was obtained for that vehicle, and the model number listed for the element is strikingly similar to that of a Dometic refrigerator heating element replacement part.

Accordingly, there exists a genuine issue of disputed material fact as to whether SunCoast "place[d] the wrong size heating element in the refrigerator thereby causing the fire in question." There also exists a genuine issue of disputed material fact as to whether SunCoast violated subsection 47-18-104(b)(6) of the TCPA by "[r]epresenting that goods are original or new if they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used or secondhand." SunCoast's summary judgment motion will be denied in its entirety.

### B. Gulf Stream

As noted, defendant Gulf Stream has also moved for summary judgment and plaintiffs have not responded in opposition. Although "[f]ailure to respond to a motion may

7

be deemed a waiver of any opposition to the relief sought," E.D. TN. LR. 7.2, the court must nonetheless examine the motion to ensure that the desired relief is warranted. *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Having carefully examined Gulf Stream's motion and supporting documentation, the court concludes that summary judgment must be granted.

Gulf Stream relies on the affidavit of its Director of Consumer Affairs, Anthony Suddon. According to Mr. Suddon,

> The refrigerator was received by Gulf Stream from Dometic fully assembled and Gulf Stream employees placed the refrigerator in the Motorhome without any assembly or disassembly and without replacing, altering or having any contact of any kind at all with the heating element in the Dometic refrigerator. The refrigerator was new and unused when it was placed in the Motorhome, then was wholesale sold and shipped to Suncoast . . . . The Motorhome was new, unused and had not been previously sold. . . .
>
> . . . Gulf Stream had no concurrent or prior knowledge that a heating element was replaced in the Dometic refrigerator and Gulf Stream was not notified, requested, or informed of any change and/or replacement to the refrigerator heating element. . . . Gulf Stream made no representations, assurances or promises to anyone regarding the Motorhome or any component part thereof with the exception of its Limited Warranty.

According to Mr. Suddon, Gulf Stream's warranty excluded the refrigerator. His affidavit concludes, "Gulf Stream Coach, Inc. and its employees did not at any time say or do anything unfair or deceptive to" plaintiffs.

The court finds no genuine issue of disputed material fact to suggest that Gulf Stream "place[d] the wrong size heating element in the refrigerator thereby causing the fire in question," nor does the court find a genuine issue of disputed material fact regarding any representation by Gulf Stream that would have violated subsection 47-18-104(b)(6) of the

8

TCPA. Summary judgment will accordingly be entered in Gulf Stream's favor as to plaintiffs' claims.

An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>United States District Judge